## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| MONICA JOSEY JAMES and | ) | |
| ARLINDA (TRAY) JOHNS | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 1-19-cv-03366 |
| | ) | |
| JASON LYDON, | ) | |
| BLACK AND PINK, Inc., | ) | |
| DOMINIQUE MORGAN, | ) | |
| JOHANNES WILSON, | ) | |
| FRANK PLACE, REED MILLER, | ) | Judge Matthew F. Kennelly |
| DAVID BOOTH, TANYA NGUYEN, | ) | |
| ZAHARA GREEN, KATIE OMBERG, | ) | |
| MEGAN SELBY, MICHAELCOX | ) | |
| AND JOHN DOE 1-TBD, | ) | |
| | ) | |
| | ) | FIRST AMENDED COMPLAINT |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

NOW COME MONICA JOSEY JAMES and ARLINDA (TRAY) JOHNS, hereinafter referred to individually as "Plaintiff James" or "Monica James," and "Plaintiff Johns" or "Tray Johns," and collectively referred to as "Plaintiffs" by and through their counsel, for their complaint, and respectfully show the Honorable Court the following:

1.  This is an action for (i) redress of the harm caused by Defendant Black & Pink's unfair business practices that led to Plaintiffs becoming associated with Black & Pink, and (ii) employment discrimination brought to secure relief for harassment, discrimination and retaliation in violation of the Civil Rights Act of 1870, 42 U.S.C. §1981, as amended ("Section 1981") and other state and federal laws.

## JURISDICTION & VENUE

2.  This action arises under 42 U.S.C. §1981, §1985(3), and 1986. Jurisdiction is invoked pursuant to 28 U.S.C. §§1331, §1367, §1339, and §1343.

3.  This Court has supplemental jurisdiction over the state law claims. These claims derive from the same nucleus of operative facts as the federal claims and the federal claims are substantial. In addition, the federal and state claims are such that Plaintiffs would ordinarily be expected to try them all in one proceeding. Finally, the state claims are closely tied to the issues of federal law, so that this court should not exercise its discretion to refuse to hear the state law claims.

4.  Venue is proper in this District pursuant to 28 U.S. §1391 because (i) Defendants have been engaged in collective actions, and have purposefully availed themselves of the jurisdiction of the courts of Illinois through each other and by engaging in activities in the City of Chicago, in Illinois Jails and Prisons, and other acts involving interstate commerce; (ii) Defendant Lydon and other unknown defendants live and operate from Chicago; (iii) Black & Pink Chicago Chapter is the most organized among their ten or more chapters across the nation; (iv) Plaintiff James was a resident of Chicago, at the time of execution of contract between her and Defendant Black & Pink; (v) All the Defendants are members of Black & Pink and regularly enter the jurisdiction of Chicago, Illinois when they engage in monthly conference calls for chapter updates. Individuals

from all over the country including Chicago, IL are present at such conference calls; (vi) Defendants emailed false and defamatory statements of and concerning Plaintiffs to many individuals, including recipients living in Chicago, IL, example shown as Exhibit B.

## PARTIES

5.   Plaintiff Monica James ("Plaintiff James" or "Monica James") is a natural person and an African American citizen who is currently residing in Osceola County, Florida. Plaintiff James is a transgender woman, and a formerly incarcerated person. She began her employment contract with Black & Pink on March 11, 2017. On December 8, 2017, Plaintiff James emailed her notice of resignation to members of the Voting Leadership Circle of Black & Pink. On December 21, 2017, the members of the Voting Leadership Circle sent a letter of termination to Monica James.

6.   Plaintiff Tray (Arlinda) Johns is a natural person and an African American citizen who is currently residing in Palm Beach County, Florida. Plaintiff Johns is a formerly incarcerated person and a Navy Veteran. On August 17, 2017, Tray Johns assumed the leadership of Black & Pink as its National Director, and began her employment contract. On or around December 21, 2017, Tray Johns was ousted and terminated from Black & Pink.

7.   Defendant Black & Pink ("Black & Pink" or "B&P"), is a national non-profit corporation, registered in the State of Massachusetts. B&P's corporate headquarters is listed as 614 Columbia Road, Dorchester, MA 02125, and maintains an office at P.O. Box 6223 Maple Street, #4600, Omaha, Nebraska 68104.

8.   On January 19, 2016, Black & Pink filed its Articles of Organization to register itself as a non-profit corporation with the Commonwealth of Massachusetts. Pursuant to its Articles of Organization, "the membership of the corporation shall consist of the members of the board of directors." Black & Pink's listed purpose is as follows: "Black & Pink is an open family of LGBTQ

prisoners and "free world" allies who support each other through advocacy, education, direct service, and organizing." From January 19, 2016 to October 17, 2017, following individuals were listed as the board of directors with the State of Massachusetts: Nora Berson, Tyrelle Hinson, Jason Lydon, Reed Miller, and Johannes Wilson. (Exhibit A).

9. Defendant Black & Pink is a nonprofit corporation with under 6 employees, conducting business nationally through chapters covering 9 or more states, including Chicago and Massachusetts.

10. Black & Pink uses the terms "board of directors," "leadership circle," "interim leadership circle," and "voting leadership circle" interchangeably. The Board of Directors and the Leadership Circle are separate and distinct individuals/entities who engage in collective decision-making. (Exhibit B)

11. From the time that both Plaintiff James and Plaintiff Johns joined Black & Pink, there was an "Interim Leadership Circle" in place that was acting as the decision-making body, in addition to or in place of the Board of Directors. On November 22, 2017, the Interim Leadership Circle registered itself as the directors of Black & Pink with the Commonwealth of Massachusetts. As far as Plaintiffs know, the members of that "Interim Leadership Circle" were: Dominique Morgan, Zahara Green, Michael Cox, Tanya Nguyen, Johannes Wilson, Reed Miller, Douglas Rogers, Robert Suttle, and David Booth. Robert Suttle resigned from the Leadership Circle and since it appears that he did not participate in the wrongful actions against the Plaintiffs, he is not made a party to the complaint. For a brief period from November 22, 2017 - January 13, 2018, Defendants had registered Afrika Lockett (legal name: Gerry Lockett), a black transgender woman as a "board" director. Plaintiffs are not aware of Afrika Lockett participating in any wrongful acts against them and as such she is not made a party to the complaint. (Exhibit C)

12. The actions of the Board members and the Leadership Circle are imputed on each other because they knowingly acted jointly and made collective decisions. As such, they all are included as defendants and sued in their official capacity and on an individual basis.

13. Defendant Jason Lydon is a natural person currently residing at 1563 W Pratt Blvd, #2, Chicago, IL 60640. He is a white gay man who founded Black & Pink in 2005 and served as its National Director until August 17, 2017. He was a board member of Black & Pink until October 17, 2017.

14. Defendant Dominique Morgan is a resident of Omaha, Nebraska. He is the current National Director of Black & Pink, and was part of the Interim Leadership Circle during Plaintiffs' tenure at Black & Pink.

15. Defendant Johannes Wilson is a natural person currently residing at 1563 W Pratt Blvd, #2, Chicago, IL 60640. At all relevant times, he was on the board of directors of Black & Pink, and a member of the Interim Leadership Circle.

16. Defendant Michael Cox is a natural person currently residing at 32 McPhee Road, Farmington, MA 0170. At all relevant times, he was a member of the Interim Leadership Circle, and on November 22, 2017, became one of the directors of Black & Pink.

17. Defendant Frank Place is a natural person currently residing at 32 McPhee Road, Farmington, MA 0170. At all relevant times, he was a member of Black & Pink.

18. Defendant Reed Miller is a natural person with a last known address at 79 Division St, #1, New Haven, CT 06511. At all relevant times, Reed Miller was a member of the Interim Leadership Circle, and on November 22, 2017, became one of the directors of Black & Pink.

19. Defendant David Booth is a natural person with a last known address at 507 Jersey Avenue, #2, Jersey City, NJ 07302. At all relevant times, David Booth was a member of the Interim Leadership Circle, and on November 22, 2017, became one of the directors of Black & Pink.

20. Defendant Tanya Nguyen is a natural person with a last known address at 1295 5th Avenue, Apt 33, New York, NY 10029. At all relevant times, Tanya Nguyen was a member of the Interim Leadership Circle, and on November 22, 2017, became one of the directors of Black & Pink.

21. Defendant Zahara Green is a natural person with a last known address at 3715 Hancock Drive, Decatur, GA 30034. At all relevant times, Zahara Green was a member of the Interim Leadership Circle, and on November 22, 2017, became one of the directors of Black & Pink.

22. Defendant Katie Omberg is an adult citizen of the State of Massachusetts, and a member of Black & Pink Boston Chapter. Upon information and belief, she personally participated in the retaliation, defamation, and excessive publication of such defamation of Plaintiffs.

23. Defendant Megan Selby is an adult citizen of the State of Illinois, and a member of Black & Pink Chicago Chapter. Upon information and belief, she personally participated in the retaliation, defamation, and excessive publication of such defamation of Plaintiffs.

24. Plaintiffs allege that each of the aforementioned Defendants published false and defamatory statements concerning Plaintiffs through the Black & Pink national listserv, through the listserv of the local chapters of Black & Pink, and through the news publications sent within jails and prisons across the country. Plaintiffs will seek leave of court to amend this Complaint and insert the true names instead of the fictitious Defendant John Does, when the same becomes known to Plaintiffs.

**FACTS**

*Facts concerning events prior to the hiring of Plaintiff James and Plaintiff Johns*
*Facilitation of trade and commerce inside prisons and jails*

25. In 2005, Jason Lydon, started doing business as Black & Pink, and began writing to LGBT people who were incarcerated.

26. In 2010, Jason Lydon, Johannes Wilson, Reed Miller and others at Black & Pink, created a system to facilitate and trade artwork made by inmates from various prisons and jails.

27. This scheme was published in the newsletters from April 2010 to July 2010 and states, "Black & Pink Art will sell artwork and apparel printed with designs produced by queer and transgender prisoners to queer and transgender folks on the outside. Items will be sold online at blackandpinkart.com, as well as sales made at events like Pride Festivals. Proceeds from the sales will go back into the artist's commissary account. Want to get involved? Send a note to the address below answering these questions: - what kind of art do you make? How do you access supplies? What can you receive or ship? Roughly about how much $ would you want for your art? How long does it take to make? Black and Pink Art C/O Community Church of Boston 565 Boylston St, Boston, MA 02116. Reed Miller, a queer pen-pal, will send you back a letter explaining how things will work! He looks forward to working with you and sharing your talents with the outside world!" (Exhibit D)

28. In August 2010, a few months after explicit advertising, and spreading the word, Black & Pink changed their advertising by removing the terms of the transactions, and simply stating, "send art related letters to: Black and Pink ART - REED MILLER" (Exhibit E)

29. Black & Pink's January/February 2013 newsletter states, "Art: Reed apologizes that the art project is currently not accepting artwork for sales until we have a solid volunteer base. You can

send artwork for use in the newsletter! Use topic tag Newsletter submissions. Feel free to include a description of your drawing." (Exhibit F)

*Facilitation of improper inmate to inmate communications*

30. In August and October 2010, Black & Pink ran the following advertisement setting their inmate-to-inmate communication network, "CAN YOU WRITE TO OTHER PRISONERS? Introducing the trial P2P (Prisoner to Prisoner) List. We recognize that many of you would like to write one or more pen-pals, and that some of you have been waiting for a while to make that connection. We know that many people can get in trouble for writing with other prisoners, and we sure don't want to get you in trouble by accident. We suggest checking with the mailroom, prison policy handbook, prison officials, or wherever makes sense for you, before you sign up for this separate prisoner-to-prisoner list, which involves writing to and receiving mail from other people in prison. Please tear off this slip and mail to: Black & Pink-P2P List, Community Church of Boston, 565 Boylston St, Boston, MA 02116." (Exhibit E)

31. By 2015, Jason Lydon, Reed Miller, and other leadership members of Black & Pink knew that incarcerated people who received Black & Pink newsletters were being targeted, that prison institutions were rejecting their newsletters for promoting inmate to inmate violence, and that their publications were used to pass messages by some of the prison gangs. (Exhibit G)

32. In November 2015, Jason Lydon established an "Interim Leadership Circle" at Black & Pink, and gathered a group of people to plan Jason Lydon's transition out of Black & Pink. This transition team was tasked with creating job descriptions for the National Director as well as the newly created position of National Organizer. "These two positions would be taking on the roles Jason has been fulfilling for the organization, splitting the one current staff position into two distinct roles will increase effectiveness and sustainability of the positions." (Exhibit H)

33. As part of the organizational transition process, Jason Lydon and Black & Pink had put in motion a plan to find "creative ways" to increase their support of the "inside organizers." In that context, they "sent out the inside chapter starter kit to all members who have expressed interest in starting a chapter." It was expected that the newly formed National Organizer would then come over and "follow up with these folks to be clear about what the goals are for organizing and building their chapter." Jason Lydon knew that much of "organizing" of inside leaders' consisted of actions that would be deemed as violations of prison rules. (Exhibit H)

34. According to Black & Pink's own decision-making chart, the Leadership Circle is the national governing body and has a supervisory position and final authority over the Plaintiffs. Further, Black & Pink, the Board of Directors, and the Interim Leadership Circle were acting in concert and in a collective decision-making capacity. As such, the acts and knowledge of each actor is imputed on the other. (Exhibit W)

*Hiring and onboarding of Plaintiff Monica James*

35. On December 1, 2016, Jason Lydon posted a job-opening for a full time National Organizer position, and announced a transition of leadership of Black & Pink to formerly incarcerated people. Few minutes after the job-posting became public, Plaintiff James received an email making her aware of a full-time job opening at Black & Pink. The job posting specifically stated that "Please keep in mind that we only hire formerly incarcerated people to be staff. We are open to helping someone relocate to Boston and individuals who have experience organizing and doing remote work in the past could potential work remote." (Exhibit I)

36. Plaintiff James was interviewed by Jason Lydon and Afrika Lockett. Plaintiff James was informed that Black & Pink has initiated a "transition of leadership" from Jason Lydon to formerly incarcerated people who are most impacted by the criminal justice system. It was portrayed that

Jason Lydon, a white gay man was using his "white privilege" to support Black and marginalized communities by doing a charitable act of handing over an established organization to formerly incarcerated black LGBT people to further their leadership. Plaintiff James was told that in her role as a National Organizer, she would be supporting prison chapters around the country. She was further assured that these were legitimate LGBT support group chapters and they were formed with the permission of the warden.

37. At no time during the interview or thereafter was Plaintiff James informed that (a) the inside prison chapters were engaged in actions that would be deemed as breaking of the prison rules and conducting clandestine activities as part of their "organizing," (b) Black & Pink is an organization engaged in selling of artwork from within the prisons, (c) Black & Pink's publications were being rejected by prisons for promoting inmate to inmate violence, (d) Black & Pink is engaged in publishing erotica in prisons, (e) Black & Pink newspapers were being used by prison gangs as a mode of communication, and (f) that the transition of leadership was intentionally designed to operate in a way whereby she and the new leadership of the organization would be controlled by a shadow board consisting of people on "Leadership Circle.

38. It reasonable and foreseeable that Plaintiffs, two formerly incarcerated individual who turned their life around and desire to encourage others to do similar would not have wanted to associate themselves with Black & Pink, an organization whose activities would be against their own penal interest.

39. Within a few days of Plaintiff James' hiring, Jason Lydon changed the terms of her contract and informed her that in order to work full-time, she would have to move to Boston, MA. She was further assured that if she agreed to move to Boston, MA, Black & Pink would support her with housing and that she could take over Jason Lydon's housing lease in September 2017, when he

moved to Chicago, IL from Boston, MA. From March – May 2017, Plaintiff James performed her job duties remotely from Chicago, IL on a part-time basis. On June 1, 2017, Plaintiff James left her hometown of Chicago and moved to Boston, MA to assume her position as the National Organizer of Black and Pink on a full-time basis.

40. On or about the last week of June 2017, Plaintiff James began a brief dating relationship with Frank Place, a white man and a member of Black & Pink.

41. On or about July 7, 2017, the dating relationship between Monica James and Frank Place ended. Mainly because while Monica James was performing a sex act on Frank Place, he pulled his phone out and had begun recording her. This act of recording was initiated without Monica James' consent and knowledge. Upon discovering Frank Place holding a camera over her, she stopped the sex act and warned him that recording a person while engaged in an intimate act, and without their consent is against the law. Further, she told him that she would report him to legal authorities if she finds out that he is in possession of such a video or is distributing it. This incident brought their relationship to an end.

42. On or about July 27, 2017, Jason Lydon, Monica James' then supervisor confronted her by demanding to know what she had done to Frank Place, and that he was "not happy." That Frank Place was a friend and well-liked by Boston Black & Pink chapter. Monica James was shocked to learn that her boss knew of this act and that he was confronting her on behalf of Frank Place, the perpetrator. It was Frank Place who had wronged her by recording or attempting to record her during a sex act. That all she did was reject an unwanted sexual advance by Frank Place, and told him that his acts were illegal. All she was doing was invoking her right to access the legal system and seek its protection if need be.

43. On or about July 28, 2017, Jason Lydon, the then National Director of Black & Pink and Monica James' supervisor told her that "if she wanted to keep her job, she should find a way to apologize to Frank Place." He further threatened her by telling her that her life and job would be in danger if she went to the police.

44. On or about August 1, 2017, in response to Jason Lydon's threat to her job and life, at the direction of Jason Lydon, Monica James sent a text message to Frank Place with an apology for hurting his feelings and thanked him for his service to Black & Pink.

45. In July 2017, Plaintiff Arlinda (Tray) Johns was interviewed and hired as a National Director, and to assume the responsibility of Black & Pink from Jason Lydon. During her interview process, she was informed that Jason Lydon, who had started Black & Pink was transitioning out of the organization and that she was to take his place and lead the organization. Tray Johns was further informed that internal documents have been put in place to assist her with her duties. Tray Johns specifically informed Jason Lydon that she was not moving from Hawaii to work under an all-white board. Jason Lydon assured her that he is leaving the organization, and that the "transition of leadership" is undertaken to hand over the power of the organization to formerly incarcerated Black people because they are most impacted by the criminal justice system.

46. At no point during her hiring process, was Tray Johns informed that: (a) Black & Pink is an organization engaged in selling of artwork from within the prisons, (b) Black & Pink's publications were being rejected by prisons for promoting inmate to inmate violence, (d) Black & Pink is engaged in publishing erotica in prisons, (e) Black & Pink newspapers were being used by prison gangs as a mode of communication, (f) that the transition of leadership was intentionally designed to operate in a way whereby she as the new National Director and the leadership of the organization would be controlled by a shadow board consisting of people on "Leadership Circle"

and that according to those "internal documents," it was intended that she only has the power to expend up to $1000 in furtherance of leading the organization, and (e) the inside prison chapters were engaged in actions that would be deemed as breaking of the prison rules and conducting clandestine activities as part of their "organizing."

47. On August 17, 2017, Tray Johns officially assumed her role as the National Director of Black & Pink.

48. Around this time, Monica James was informed that the agreement to have her assume the rental lease from Jason Lydon had fallen through, and so she no longer had secure housing. Risking homelessness, she went on her Facebook and asked her Facebook friends if anyone had any leads for housing and she is new to Boston. To this post, Michael Cox responded that he had a spare room but he gave it to his boy Frank Place. Plaintiff James was unnerved by Michael Cox's sudden entry and reference to her ex, and so she blocked him off her Facebook page.

49. In response to Monica James' Facebook post for requesting housing support, Tyrelle Hinsen, the office manager started arguing with Plaintiff James because he was not happy that she went "public" with her need for housing support because it looked "bad" on Black & Pink that they are not supporting their National Organizer. This incident was Tyrelle Hinson's payback harassment towards Monica James for invoking law enforcement on Frank Place.

50. Tray Johns had recently assumed the leadership of the organization and was baffled by Tyrelle Hinson, the office manager threatening to physically assault her and refusing to work with Monica James, the National Organizer. Tray Johns called an emergency meeting of Leadership Circle to discuss Tyrelle Hinson's behavior and ask that he be suspended.

51. After the initial incident with Tyrelle Hinson, Jason Lydon confided to Tray Johns that she would have problems with Monica James and he would have fired her but he didn't want that

image of the white man firing the black trans woman. However, Tray should recommend to the leadership circle for her firing. Tyrelle Hinson admitted to Tray Johns that Jason Lydon told him that Monica James had threatened law enforcement on Frank Place and so he was mad at her.

52. On or around September 4, 2017, Tray Johns emailed members of the Interim Leadership Circle[1] that the management structure of Black & Pink is not what had been expressed to her when she agreed to take on the role of National Director, and move from Hawaii to Boston. That she refused to be a "token" black face, that there appear to be two parallel management structures in place, whereby the board listed on articles of organization filed with the State of Massachusetts is different than that of the Leadership Circle. She asked for a meeting to be convened whereby the correct and true board members of the organization can be determined and registered with the state. Plaintiff Johns was simply asking that the terms of the contract to assume the leadership of Black & Pink be followed through. However, from that moment on, Defendants through Reed Miller, Dominique Morgan, and Michael Cox started resisting Plaintiff Johns' attempts and demands of bringing Black & Pink under proper compliance of the laws. (Exhibit J)

53. In addition to Frank Place, even Michael Cox and Johannes Wilson, members of the leadership circle were trying to gather some sort of recording of Plaintiff James. Plaintiff James submits that Johannes Wilson, Michael Cox, and Frank Place's desire to obtain a recording of her was discriminatory in nature, evidence of their bias towards black people, and with a motive to diminish her free will and assert malicious control over her. Johannes Wilson, in an email

---

[1] Interim Leadership Circle Members as of September 4, 2017: Robert Suttle, Tanya Nguyen, Johannes Wilson, Michelle Tat, Reed Miller, Ashley Diamond, Chrishaun Mcdonald, douglas.keith28@gmail.com, renedavid1971=3@gmail.com, Dominique Morgan, Zahara Green, David Booth, Afrika Lockett, eramirez_1992@yahoo.com. (Exhibit J)

conversation advises Michael Cox, "if you have any way of recording the conversation I would highly recommend it." (Exhibit K)

54. Michael Cox was hostile towards Plaintiff James on account of her race and sex, retaliated against her for rejecting unwanted sexual activity from Frank Place and invoking her right to access the legal system, as evidenced by his actions. Michael Cox had never met Plaintiff James, but still considered her "aggressive" and demanded that in order to have an in-person conversation with him, he would need to record Plaintiff James, or have a neutral third party be present. Michael Cox was on the leadership circle of Black & Pink. In his account of the events on September 17, 2017, he states, "I was hesitant because I was worried you'd be aggressive so I thought either recording or having an observer would help to keep our conversation as productive as possible" (Exhibit L)

55. The working environment at Black & Pink had reached a level of toxicity whereby the Interim Leadership Circle had to have a meeting with Michael Cox to discuss "race, privilege, and stereotyping" and "round out with ways to be more cognizant in communications with people outside of one's identity." (Exhibit M)

56. The in-fighting and harassment, racism and hostility against Plaintiff James was so evident that Robert Suttle, one of the LC members initiated resignation from the interim leadership circle and stated, "I appreciate this transparency, but I didn't sign up for this. Its clear to me that those that are so-called invested in the organization are purposely going outside of the scope of their roles to carry on being in conflict with national staffer's. I don't think this will be the last matter as these relationships or conflicts run deep. I'm really disappointed that one of the LC Members is now infighting with a staff member. Unbelievable. Having said that I'm giving notice that I'm rethinking my commitment to the Black & Pink interim leadership circle. I'll give my final decision by COB Friday September 29, 2017." (Exhibit K)

57. The management inquiry in the case of Plaintiff James sexual harassment by Frank Place itself was of discriminatory nature where it was conveyed to Plaintiff James both implicitly and explicitly by Jason Lydon and other members of Leadership Circle that Plaintiff James should not seek legal redress. Further, all the members of the Leadership Circle, despite knowing the details of the conflict between Frank Place and Monica James, went out of their way to avoid documenting it.

58. In early October 2017, Tray Johns, Dominique Morgan, and Tanya Nguyen set up a committee to investigate and address the conflict between Michael Cox and Monica James. (Exhibit K)

59. As an outcome of the investigation concerning Michael Cox's hostility and harassment of Monica James, the Leadership Circle, as the supervisory body, came up with a solution to appease Frank Place protect him "from feeling harassed or unsafe. There is no need for either party to fear unwanted contact from the other, especially if there is a risk of legal/state involvement. This is against our mission as an abolitionist organization and free world allies." The Leadership Circle requested Frank Place from contacting Monica James. (Exhibit N)

60. Tanya Nguyen, on behalf of the Leadership Circle, informed Monica James, "As a reminder, initiating additional contact with Frank Place is contrary to the expectations of your organizational responsibilities with Black and Pink. While we cannot enforce expectations for Frank initiating contact with you, we can request that you alert us if Frank Place initiates contact, harasses you, or sends otherwise unwanted messages so we can support you." (Exhibit O)

61. Defendants, acting in concert with each other, impaired Plaintiff James' right to enforce her employment contract with Black & Pink. Defendants obstructed Plaintiff James from gaining

access to the legal system, when not accessing the legal system against Frank Place was placed as a condition for her continued employment.

62. As part of the outcome, the Leadership Circle also told Monica James and Michael Cox to write their own version of the events. (Exhibit L and P)

63. Plaintiff Tray Johns found the treatment of Monica James racially discriminatory and stated her objection to the Leadership Circle. She also noted that the "Interim Leadership Circle" is an advisory committee/board consisting of a group of volunteers who are interfering with the operation of the organization, and harassing her employee Monica James by pressuring her to agree to unenforceable agreements that are not in furtherance of her own interest as a condition of her employment. It was noted that "no contact" agreement failed to address the safety and privacy concerns of Monica James, which were mainly that Frank Place apologize for invading her privacy and provide assurances that he does not possess any sexually explicit video of Plaintiff James, and that any such video is destroyed. Further, Monica James was being forced to remain silent as a condition of working for Black & Pink. Plaintiff Johns informed the leadership circle that they were protecting Frank Place, a white man at the expense of Monica James, a black trans woman.

64. On or around October 8, 2017, Plaintiff Johns discovered that Jason Lydon still had access to the Black & Pink bank account, and had an active bank card.

65. In mid-October 2017, Plaintiff Johns began the process of bringing Black & Pink under legal compliance, an organization that she had assumed responsibility for. She informed the Interim Leadership Circle that she has begun the process to bring Black & Pink under legal compliance. In furtherance of that objective, she is preparing to host a fundraising gala at the Harvard Law School on December 9, 2017. She also informed the Interim Leadership Circle that she and her staff will be hosting a silent auction on the internet on November 29, 2017 to raise

funds to host a Black & Pink stakeholders meeting that was scheduled for December 16, 2017. She also instructed Tyrelle Hinson to file a certificate of change of directors with the State of Massachusetts to reflect the actual and new leadership of the organization, consisting of the members of the Interim Leadership Circle and herself as the National Director. (Exhibit Q)

66. By mid-November 2017, the environment at Black & Pink was racially toxic. Reed Miller and other Interim Leadership Circle were attempting to hire outside consultants to help in mediating conflicts "between POC Staff and white volunteers."

67. On November 17, 2017, Plaintiff Johns received notice that the "Interim Leadership Circle" instituted themselves as the "Voting Leadership Circle." An email was sent to Tray Johns informing her that "in consideration of the legal implications and confusion around the Board vs. Leadership Circle we collectively agree that all members of the Leadership Circle should be added to the Articles of Incorporation." (Exhibit R)

68. Upon receiving notice of the Interim Leadership Circle's unauthorized action of overriding and circumventing the process initiated by Tray Johns to install a proper legal board, she consulted Tanya Nguyen, who was one of the oldest active member of Black & Pink and an attorney. After that Tray Johns authorized removal of David Booth, Robert Suttle, and Dominique Morgan from the board of directors of Black & Pink. Tanya Nguyen was still listed as one of the directors. (Exhibit S)

69. Upon information and belief, Reed Miller, and the then Interim Leadership Circle, hacked into Plaintiff John's email accounts to obtain the passwords for various Government Portal login information and then instituted themselves as new Board of Directors of Black & Pink. (Exhibit T)

70. At this point, as the responsible party for Black & Pink, Plaintiff Johns believed that she was obligated to protect its assets. In line with that obligation, upon learning of the initiation of an organizational takeover by the volunteers and members of the Interim Leadership Circle of Black & Pink, she secured the donated funds by going to the bank and converting $50,000 in liquid funds to a cashier's check in the name of Black & Pink, and informed Black & Pink's bookkeeper Cathty Jacobowitz by sending her a copy of the cashier's check. Further, Plaintiff Johns was advised by Cathy Jacobowitz that while she sorted the legalities of Black & Pink's governance structure, she could open another bank account on behalf of Black & Pink and deposit the cashier's check in the new account.

71. On or about November 18, 2017, Plaintiff Johns received a "request for resignation" from the Interim Leadership Circle. (Exhibit U)

72. Around this time, Jason Lydon personally visited the Eastern Bank and removed Tray Johns as the authorized party on the bank account. At that point, realizing that she was no longer considered the responsible party for Black & Pink, she went to the bank and in Black & Pink's bank account, deposited all the checks that were in her possession and safekeeping - the $50,000 cashier's check, a check of $50,000 issued by Elton John Foundation grant, and other smaller donation checks totaling $15,000. The sum total of the deposit being $115,000.

73. By October 31, 2017, Plaintiff James had already experienced an undue amount of harassment, intimidation, and an organized attempt to diminish her rights to access the legal system. She left Boston, MA and moved to Providence, RI.

74. On or around November 6, 2017, Plaintiff James was chosen to be a fellow of Move to End Violence (MEV) program. As part of her fellowship, Black & Pink, being the organization associated with Monica James was to receive funding to support and enhance her work. At this

point, Monica James informed the MEV faculty that she has been experiencing racial hostility, and discriminatory treatment on account of her race and sex from Black & Pink members, and that she can't continue working at Black & Pink. She also reported that she was sexually assaulted by Black & Pink volunteer, and that the entire Interim Leadership Circle and the Board Members of Black & Pink had ganged up to protect the white volunteer, and keep her silent.

75. On or around the last week of November 2017, Plaintiff James filed a petition for restraining order against Frank Place seeking remedy for destruction of any video recording of her while in performance of a sex act, and prohibition of dissemination of such a video. Plaintiff James' petition for restraining order was not granted by the Court because a restraining order was not deemed as an appropriate remedy for Plaintiff James' harm. Plaintiff Johns, who was her immediate supervisor and had personal knowledge of the matter, signed as a witness to Plaintiff James' petition for restraining order against Frank Place.

76. On or about December 4, 2017, Plaintiff Johns was terminated by Black & Pink's Interim Leadership Circle, now known as the Voting Leadership Circle.

77. During Plaintiffs time at Black & Pink, they both faced hostility, discrimination, and targeting from various Black & Pink members, including members of Black & Pink Boston chapter.

78. Specifically, Katie Omberg and Julia Blencowe orchestrated a boycotting of Plaintiff James for invoking her right to access the legal system against Frank Place, and of Plaintiff Johns for not penalizing Plaintiff James for considering the option of seeking the support of law enforcement for her protection.

79. Upon information and belief, Katie Omberg and Julia Blencowe personally participated in publishing and republishing defamatory and false statements against Plaintiff James and Plaintiff Johns.

80. Upon information and belief, Katie Omberg and Julia Blencowe sent letters to prisoners containing defamatory statements of and concerning Plaintiff James and Plaintiff Johns.

81. Plaintiff Johns experienced targeting and discrimination on the account of her race and sex in the formation and performance of her contract in taking over Jason Lydon's position as the National Director, and to accept the "transition of leadership" of Black & Pink. Plaintiff Johns demanded that Black & Pink follow the laws of the Commonwealth of Massachusetts and not operate with a shadow management. She protested against the discriminatory treatment of Monica James by the Leadership Circle. She signed as a witness to Plaintiff James' petition for a restraining order against Frank Place.

82. Black & Pink, and the Interim Leadership Circle retaliated against Plaintiff Johns for exercising her contractual rights, for engaging in a protected activity of signing as a witness and participating in seeking remedy from law enforcement and the Courts.

83. On December 8, 2017, Monica James emailed her notice of resignation to the Black & Pink Interim Leadership Circle, and demanded that a process to separate her brand and name from Black & Pink be undertaken. (Exhibit V)

84. On or about December 21, 2017, Plaintiff James received a notice of termination from Black & Pink's Leadership Circle.

85. Plaintiff James' last paycheck was withheld and never disbursed to her account.

*Retaliation & Defamation of Plaintiff James & Plaintiff Johns*

86. On January 1, 2018, Black & Pink's Voting members of the Leadership Circle, specifically, began circulating a 14-page letter via email to their entire listserv, various funders, and organizations with a subject line titled "Reflection on the 2017 Black and Pink Leadership Transition Process."

87. The January 1, 2018 letter contained false statements that Defendants knew to be untrue, and which were made with the intent to injure, disgrace, and defame Plaintiffs, to bring Plaintiffs into discredit, and to cause the readers of the letter to hold Plaintiffs in contempt. Further, in light of the illegal structure of the Interim Leadership Circle, the entire letter is misleading. (Exhibit B).

88. Defendants knew that Monica James had submitted her notice of resignation on December 8, 2017, and still knowingly and with reckless disregard made false portrayal that she was terminated from Black & Pink.

89. Despite such knowledge and as a retaliatory measure, Defendants falsely portrayed as if Plaintiff James had engaged in some wrongdoing and that they fired her for it.

90. The truth is the exact opposite - Plaintiff James could no longer bear to their wrongdoing, and had submitted her notice of resignation. (Exhibit V).

91. Defendants, specifically, the Board, the Leadership Circle, and other members of Black & Pink, whose identity is not yet known to Plaintiff James, retaliated against her because she is Black, for opposing and calling out discriminatory actions against her, and when she terminated her contractual relationship with Black & Pink by publishing false, misleading and defamatory statements of and concerning Plaintiff James to a very vast audience.

92. Defendants, specifically, the Board, the Leadership Circle, and other members of Black & Pink, whose identity is not yet known to Plaintiff Johns, retaliated against her when (i) she questioned the shadow governance structure of the board of directors, and demanded that Black & Pink be brought under compliance by disclosing the names of the individuals that are actually

governing the organization, (ii) she participated in the protected activity of serving as a witness in Plaintiff James' petition for restraining order against Frank Place, and (ii) when she objected to the Leadership Circle's discriminatory treatment against Plaintiff James, whereby Plaintiff James was being compelled to give up her right to access the legal system and enter into unenforceable agreements as a condition of her employment with Black & Pink.

93. The January 1, 2017 letter drafted and circulated by the Defendants contained the following specific false, malicious, and defamatory words of and concerning Plaintiff James and Plaintiff Johns:

    a. "We have always sought to center the power of currently and formerly incarcerated people (FIP). Until about two years ago, B&P hadn't fully actualized our values of adequate support/power-building work for formerly incarcerated POC. It was with this understanding that founder and former National Director Jason Lydon, with the assistance of a Transition Team from the B&P community, drafted a 2-year transition plan. Over the two-year period, committees were created to restructure B&P, outline a hiring process, create governance documents, and decide what the transition to a formerly incarcerated and POC- led organization would look like. Formerly incarcerated and/or POC were fully involved in the process to ensure their voices were amplified without tokenizing or burdening them with all of the labor. Over the last few months, B&P has learned the hard way that careful planning and good intentions can still fail to anticipate complex interpersonal interactions." (Exhibit B: Pg. 2, Para 7; Pg. 3, Para 1-2)

        **Plaintiffs' Response:** The above quoted statements are false and misleading. The transition of leadership was malicious and not good intentioned because Jason Lydon and the Interim Leadership Circle intentionally and maliciously created a

shadow board of governance, and knew that such an action is contrary to the law.
Further, Jason Lydon and the Interim Leadership Circle intentionally targeted
Plaintiff James and Plaintiff Johns, who are Black and formerly incarcerated and
initiated a sham transition of leadership in an effort to carry on their suspect
activities of engaging in facilitation of trade of art-work inside and outside prisons,
facilitating unauthorized inmate-to-inmate communications, and sending content
inside jails and prisons that was resulting in LGBT people being targeted for
receiving it. There was no actual "transition of leadership" because according to the
internal documents, the new National Director only had the power to spend up to
$1000 in furtherance of Black & Pink's activities.

b. "Tray and Monica have also expressed concerns about Jason's involvement with the LC
since Tray assumed the National Director position. After Jason left his position as National
Director, he was not a member of the LC in any capacity. On a few occasions, we reached
out to him with questions about B&P funding, organizational policies, or hiring questions
as he had a more intimate and historical understanding of these processes, and we needed
clarification." (Exhibit B: Pg. 3, Para 6)

> **Plaintiffs' Response:** Above-quoted statement is false and defamatory. Even after
> Tray Johns assumed the National Director position from Jason Lydon, he was still
> listed as a board member with the Massachusetts Secretary of State and had full
> access to Black & Pink's bank accounts and had an active debit card.

c. "Third, in late November, four months following their break-up, Monica alleged that
Frankie filmed her performing a sexual act. She then filed a restraining order against
Frankie, which was witnessed and signed by Tray. During the hearing, Monica stated that

she caught Frankie filming her and asked him to delete it. She also mentioned during the hearing that she suspects that Frankie still has the video, but acknowledged that she had not seen either the original or a copy. The first time the LC heard Monica claim this incident was a few days before the hearing in early December." (Exhibit B: Pg. 4, Para 1)

> **Plaintiffs' Response**: The above-quoted statements are false and defamatory. All the defendants, including Jason Lydon, Black & Pink, and the members of the Interim Leadership Circle were aware of the conflict between Frank Place and Monica James, whereby Monica James had caught Frank Place trying to video record her without her permission during a sex act. The above-quoted statement also attempts to imply that Tray Johns made a false statement when she signed as a witness on Monica James' petition for restraining order against Frank Place. She did not.

d. "As an abolitionist organization that believes in transformative justice, B&P has not and would not collude to condone and hide sexual assaults that we are apprised of; rather, we would, with community support, engage in a process to bring the perpetrator to accountability in a way that centers the healing needs of the person who experienced harm." (Exhibit B: Pg. 4, Para 3)

> **Plaintiffs' Response:** The above-quoted statement is false and defamatory because Defendants did not engage in any process to bring Frank Place to accountability, and nor did they center the healing needs of Monica James. Rather, Defendants attempted to silence, penalize, and intimidate Monica James for rejecting Frank Place's sexual advances to record her and for telling him that his actions were against the law. The Interim Leadership Circle, including Jason Lydon kept on

harassing her by discussing her private affairs, attacking her because of it, and demanding that she agree to not take any legal action against Frank Place as a condition of her employment with Black & Pink. At no time was Monica James provided any assurance by Frank Place or the Leadership Circle that there is no recording of her and that she does not need to worry. Black & Pink and the Interim Leadership Circle protected the interests of Frank Place at the expense of Monica James.

e. "Prior to Jason stepping down as National Director and the current LC stepping in, Monica engaged in a brief intimate relationship with a B&P member, Frankie. At the time, Frankie had recently been released from incarceration and is now still under community supervision. Their relationship didn't end amicably, and Monica has escalated a number of serious and untrue allegations against Frankie. Given that Frankie is not only under community supervision, but also because of his status as someone on the sex offender registry, these allegations could potentially carry serious criminal penalties for him." (Exhibit B: Pg. 3, Para 6)

> **Plaintiffs' Response**: The above-quoted statements are malicious, false, and defamatory and the Defendants know that they are false. Black & Pink, Jason Lydon, and the Interim Leadership Circle did not undertake any investigation into the dispute between Frank Place and Monica James. Rather, "transformative justice" measures were implemented by Defendants, which in this case meant deliberately stalling, harassing, and obstructing Monica James from initiating a legal investigation against Frank Place. As such, there is no way for Black & Pink,

Jason Lydon, and the Interim Leadership Circle to make the determination that Monica made "untrue allegations against Frankie."

f. "Throughout Tray's suspension, Monica took several actions against B&P including threatening and maligning B&P leaders, working with Tray to contact and dissuade funders, and attempting to extort funds from B&P in return for her silence. Monica demanded a substantial salary increase; a cut of all funds granted to B&P or a large lump-sum payment; and for full control of B&P to be given to Tray, including the ability for Tray to instate an LC of her choosing. In response to these actions, and after consulting with an employment attorney, Tray and Monica's employment was terminated on December 21. Dominique, as the Interim National Director and thus with proper authority as Monica's direct supervisor, terminated Monica after seeking advice from the LC. Tray did not respond to the email containing the termination, but acknowledged it during an impromptu community meeting in Boston with Dominique on December 22." (Exhibit B: Pg. 7, Para 7)

**Plaintiff James' Response**: The above statements are false, misleading and defamatory. By December 8, 2017, Plaintiff James had already provided her notice of resignation to the Interim Leadership Circle, and was engaged in negotiations as to how to close out their relationship. In an email to the Interim Leadership Circle, she stated, "You are aware that I don't need anything else to support a civil remedy request but again, I don't want to be forced to take that public route against you. And if not dragging others into this and disrupting all of our lives I want to personally address the matters at hand and upon mutual agreement walk away

peacefully and respectfully. Our relationship is pretty much over because the damages that have been done doesn't give the victim much room for reconciliations." Plaintiff James did not threaten or malign any Black & Pink leaders. Further, Monica James did not attempt to extort funds from Black & Pink. If anything, by that point, she had a genuine legal dispute with Defendants, and was engaged in discussions as to how to civilly end their relationship. Lastly, Monica James' employment was not "terminated." She resigned on December 8, 2017. The portrayal that she was "terminated" is false and misleading. (Email: Monica James Email Your Demands)

g.  "On November 17, 2017, Tray abruptly left an LC meeting, and the LC discovered that online filings with the Secretary of State had been changed to remove almost all of the LC and to name new Board officers, many of whom were not members of Black & Pink but have relationships with Tray. This was done without approval from the LC and at least one of the newly named Board officers, as attested in a letter sent from that person to the LC. Texts with Ty confirmed that he made these changes to the filings following Tray's instruction. Over the next few days, Tray threatened to litigate the LC using her access to B&P funds, attempted to withdraw and cash substantial funds from the organizational bank account, authorized additional state filings, and worked with Monica to contact major funders to try to persuade them to stop funding B&P. Tray's actions constituted a serious threat to the furtherance of our mission in service to our inside members, and we had to prudently act to maintain that commitment. Fortunately, we were able to gain control of the bank account and cancel numerous transactions for unauthorized spending, such as the purchase of concert tickets." (Exhibit B: Pg. 6, Para 7-8; Pg. 7, Para 1)

**Plaintiff John's Response:** The above-quoted statements are false and defamatory. Plaintiff Johns was simply taking necessary actions in the performance of her contractual obligations to Black & Pink, and bringing it under legal compliance, something the previous leadership of Jason Lydon chose not to do. The Interim Leadership Circle, which was an advisory body had decided to team up against Plaintiff Johns. She was simply performing her fiduciary obligations and securing the funds that she was responsible for from the rogue Interim Leadership Circle. Additionally, the Interim Leadership Circle was not the authorized legal body to approve or disapprove of Tray John's actions. The entire governance structure was deliberately created by Jason Lydon and the Interim Leadership Circle to avoid assumption of responsibility and claim plausible deniability. In spite of their lack of authority, the Interim Leadership Circle was aware that Plaintiff Johns had secured additional funding from Diller Von Furstenberg Family Foundation to convene a meeting of Black & Pink stakeholders to ensure transparency and bring the organization in compliance with legal requirements, and in line with its stated mission, and had authorized Plaintiff John's actions taken in furtherance of it. Further, Plaintiff Johns had also organized a gala at the Harvard Law School on December 9, 2019. Plaintiff Johns was advised that they were not allowed to do raise funds at the Harvard Law School. As such, an online fundraiser was organized for November 29, 2017. The concert tickets were purchased to be auctioned off at the online fundraiser. Further, Tray Johns purchase of the concert tickets was well within her powers, and she was not required to seek approval of the Interim Leadership Circle because she had already raised the necessary funds, and more to

cover the cost of the concert tickets. According to the internal documents, the National Director was required to obtain approval from the National Leadership Circle if "spending over $1000 not planned in the original budget and with no additional funds brought in to cover it." (Exhibit W)

94. On or around January 3, 2018, Dominique Morgan, the Leadership Circle, and other members whose names are not currently known to Plaintiffs, authorized further publication of the January 1, 2018 defamatory letter by being "sent out to chapter list." The defamatory letter had already been sent out to a "list of funders, orgs that we work with." (Exhibit X)

95. On April 8, 2018, Michael Cox published a false and defamatory article of and concerning Plaintiff James and Plaintiff Johns on the website "Medium." (Exhibit Y)

96. Specifically, Michael Cox made the following statements that he knew were false:

    a. "In regards to frank and Monica- Monica's story was riddled with lies and the judge literally laughed her out of court after finding her inconsistent statements to not be credible."

        **Plaintiff James' Response**: The above-quoted statements are false and defamatory. The court did not make any findings as to the consistency or credibility of Monica James' statements. Rather, her petition for restraining order was denied because that was not the appropriate remedy for the alleged harm. Specifically, Frank Place recording a video of Monica James during performance of a sex act without her consent, and Black & Pink members ganging up on Monica James to protect the interests of Frank Place was not something that qualified for a restraining order, and nor could it be remedied by it.

b.  "Tray "mismanaged" an enormous amount of funds from black and pink. The 50k check she describes has an interesting twist. According to the Eastern Bank manager, tray attempted to CASH this check, not redeposit it. The teller deposited this check and when she went to withdraw the funds a "no-debit" Jag came up. According to this manager, Tray became irate and asked to reverse the deposit to no avail. Essentially tray was duped into redepositing these funds.

> **Plaintiff John's Response:** The above-quoted statements are false and defamatory. Plaintiff Johns did not mismanage any funds. Plaintiff Johns did not attempt to cash a check for $50,000. Rather, she had the bank prepare a cashier's check in the name of Black & Pink. Not her own name. Further, Tray Johns informed black & Pink's accountant Cathy Jacobowitz that she had a cashier's check of $50,000 in her possession that was issued in the name of Black & Pink. Tray Johns was advised by Cathy Jacobowitz, Black & Pink's accountant that she should open a new bank account in the name of Black & Pink and deposit the cashier's check in that account. When Tray Johns went to the bank to open a new bank account for Black & Pink, she was informed that Jason Lydon had removed her as an authorized party to act on behalf of Black & Pink. At this point, Tray Johns independently and willingly deposited all the funds in her possession in Black & Pink's bank account.

c.  "Tray attempted to orchestrate a coup in the organization and she was caught red handed and asked to leave."

> **Plaintiff John's Response**: The above-quoted statement is false and defamatory. Plaintiff Johns did not, and had no reason to orchestrate a coup. She was already the National Director of Black & Pink, and had assumed the leadership of the

organization from Jason Lydon. Rather, Plaintiff Johns was simply doing her job and bringing an organization that she was responsible for under legal compliance.

d. "Tray attempted to unilaterally revise the articles of incorporation fraudulently and without consent from board members."

> **Plaintiff John's Response**: The above-quoted statements are false, misleading, and defamatory. Black & Pink, Jason Lydon, and the Interim Leadership Circle had intentionally created an organizational structure with a shadow management structure.

e. "Tray purchased jay z tickets and subsequently lied that she won them in an auction. After we cancelled the purchase tray repurchased them with her own credit card (she didn't win them). We spoke with management at Ticketmaster who spilled the tea."

> **Plaintiff John's Response**: The above statements are false, misleading, and defamatory. The Jay Z Concert tickets were bought to be raffled off in the online auction that was to be held on November 29, 2017. Plaintiff Johns was not required to obtain authorization of the Leadership Circle because she had raised the necessary funds to cover the cost of purchase. Plaintiff Johns never claimed that she won the tickets, and Michael Cox knew that she did not win them.

97. On or around September 18, 2018, Plaintiff James discovered the existence of an article that was posted on September 1, 2018 under the profile of a person named "Chris Cummings" on the internet via the website "Medium." Upon information and belief, Chris Cummings is a pseudonym of the Defendants. The Defendants have been engaged in collective decision-making and as such, the act of one defendant is attributed to all the defendants. This article in its entirety is false, misleading, and defamatory and aimed to portray Plaintiff James in a negative light. (Exhibit Z)

98. Specifically, the September 18, 2018 the article stated:

a. "Many members reached out to help her find housing and welcome her to Boston." (Exhibit Z)

> **Plaintiff James' Response**: Black & Pink members neither assisted her in finding housing nor did they welcome her to Boston. Rather, she lost her secured housing arrangement when she stopped Frank Place from video recording her during a sex act, and told him that such an action was illegal.

b. "Monica subsequently admitted to several Black and Pink members that the text was the response of "a scorned woman" and he was lucky that's all she did to him." (Exhibit Z)

> **Plaintiff James' Response**: The above statement is false and defamatory. Plaintiff James did not admit to anyone or any Black & Pink member that her text was a response of a scorned woman.

c. "Monica began calling Black and Pink board members at all hours of the night. During these irate calls, she threatened their life and safety." (Exhibit Z)

> **Plaintiff James' Response**: The above statement is false and defamatory. Plaintiff James did not call Black & Pink board members at all hours of the night, nor did she threaten their life and safety.

d. "The Board held an emergency call with Monica to hear her complaints and attempt to de-escalate her behavior. For over an hour, Monica launched into a series of delusional black mail demands, unreasonable requests for financial gain (she demanded a percentage of each grant Black and Pink received and an immediate raise of $40,000) and to turn control of the company over to a recently terminated employee. She appeared to be intoxicated or in the midst of a mental health crisis." (Exhibit Z)

**Plaintiff James' Response**: The above statements are false, misleading, and defamatory.

99. In December 2017 or January 2018, Plaintiff James, in an effort to resolve the dispute with Black & Pink in the most amicable fashion possible, invited Jason Lydon, Johannes Wilson, and the rest of the Interim Leadership Circle for a community facilitated meeting in Chicago, IL. At this meeting, Megan Selby was the only representative on behalf of Black & Pink. Defendant Selby, in a room full of people, started yelling at Plaintiff James and told her that she won't forgive her for hurting her friend Jason. Upon information and belief, Megan Selby actively participated in spreading and republishing the January 1, 2018 defamatory letter.

100.    Neither Plaintiffs were informed that Black & Pink is and has been engaged in clandestine organizing activities inside prisons and jails across the country, facilitating suspect inmate to inmate communications, or doing anything that would be considered as violating prison rules and regulations. Plaintiffs did not know and were not informed that they were assuming the leadership of an organization that is engaged in trade within the prisons. If Plaintiffs were made aware of these material facts, they would have never agreed to enter into a contractual relationship with Black & Pink and take leadership of an organization whose activities would be against their own penal interests.

## CAUSES OF ACTION

101.    The foregoing allegations 1- 100 are hereby incorporated into each of the counts below.

### Count 1 - 42 U.S.C. §1981
### (Monica James and Tray Johns)

102.    Defendants violated §1981 by failing to respond to multiple pleas from Plaintiff James and Plaintiff Johns to address the systemic racial harassment and stereotyping that she was subjected, and which created a hostile work environment between March 17, 2017 and December 8, 2017.

103. Defendants violated § 1981 by creating a hostile work environment for Plaintiff James because she was black and because she reported racial harassment by Michael Cox, Jason Lydon, Johannes Wilson and other Black & Pink members.

104. Defendants violated § 1981 by creating a hostile work environment for Plaintiff Johns because she was black and because she reported racial harassment by Reed Miller and other Black & Pink members.

105. Defendants violated §1981 by their biased hiring practices against Plaintiff James and Plaintiff Johns whereby (i) they specifically targeted black people who were formerly incarcerated to become leaders of Black & Pink and fill the position of National Director and National Organizer and (ii) withheld/failed to disclose material facts about the organization which they were expected to assume responsibility for. Both the Plaintiffs are African American and belong to the protected class.

106. Defendants violated §1981 by intentionally instituting a shadow board of governance and impairing the ability of Plaintiff James and Plaintiff Johns to fulfill the terms of their contracts, and exercise its privileges.

107. Defendants violated §1981 by retaliating against Plaintiff James and Plaintiff Johns by publishing false, misleading and defamatory statements of and concerning Plaintiffs to a very vast audience upon the termination of the employment relationship.

108. Defendants violated §1981 by retaliating against Plaintiff James by falsely portraying as if she was fired from her employment. Monica James resigned from Black & Pink because she refused to bear their hostile and discriminatory treatment of her.

109. Defendants wrongfully infringed on Plaintiff James' protected rights by conditioning her continued employment with her ability to access legal recourse against Frank Place.

110.    Defendants violated §1981 by retaliating against Plaintiff James because she is a black woman who invoked the law and the legal system on Frank Place, a white man.

111.    Defendants violated §1981 when they retaliated against Plaintiff Johns for: (i) objecting to the shadow governance structure of Black & Pink consisting of Board of Directors & Interim Leadership Circle, whereby the individuals listed with the Secretary of State are not the actual individuals who are responsible for the organization; (ii) participating in the protected activity of serving as a witness in Plaintiff James' petition for restraining order against Frank Place, and (ii) objecting to the Leadership Circle's racially discriminatory treatment against Plaintiff James, whereby Plaintiff James was being compelled to give up her right to access the legal system and enter into unenforceable agreements as a condition of her employment with Black & Pink, and being attacked by Michael Cox, a white member of the Interim Leadership Circle.

112.    Defendants conduct was unreasonable, or alternatively was willful or wanton or intentional.

113.    As a proximate result of Defendants illegal indifference to Plaintiffs federally protected rights, Plaintiffs have suffered depression, anxiety, emotional distress, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

114.    WHEREFORE, Plaintiffs, by counsel, respectfully prays that this Court provide the following legal remedies:

a.    Award Plaintiffs lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b.    Enjoin Defendants from discriminating against black workers by allowing members/leadership to create a hostile work environment;

c.  Award Plaintiffs the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

d.  Award compensatory damages;

e.  Award punitive damages; and

f.  Award any other relief that this Court deems just.

g.  Plaintiffs demand a trial by jury.

**Count 2 - 42 Civil Conspiracy**
**(Monica James and Tray Johns)**

115.  Defendants Black & Pink, members of the Interim Leadership Circle, and the Board of Directors conspired with one another, as well as other individuals and entities, to perpetrate an unlawful act upon Plaintiffs or to perpetrate a lawful act by unlawful means, *to wit*: Defendants fraudulently failed to disclose material facts regarding Black & Pink's shadow governance structure, and their activity of conducting trade of artwork inside prisons and jails. This lack of disclosure was meant to induce Plaintiffs in becoming associated with, and assume leadership of Black & Pink. Plaintiffs in fact did assume the leadership of Black & Pink.

116.  The participants in the conspiracy, including Defendants, put their own pecuniary interests ahead of the welfare, penal, and economic safety of the victims of the conspiracy, including Plaintiffs.

117.  As a direct and proximate result of Defendants' participation in, and furtherance of the conspiracy; Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand an entry of judgment against Defendants for an amount within the jurisdictional limits of this Court, including an award interest, attorneys' fees, and costs.

**Count 3 - 42 U.S.C. §1985(3) Ku Klux Klan Act of 1871**
**(Monica James and Tray Johns)**

118.    To state a claim under § 1985(3), "a complaint must allege that the defendants did (1) conspire or go in disguise on the highway or on the premises of another (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of (the) conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States."

119.    Neither Plaintiff James or Plaintiff Johns was made aware of a number of facts regarding operations at Black & Pink. First, the fraudulent misrepresentation about Black & Pink's trade of inmates' art works was found out by Plaintiffs after joining and by happenstance. Second, Defendants disguised the control of the organization to be still remaining with the Leadership Circle and other unknown people while misrepresenting to the Plaintiffs that they were the new leaders of the "transition of leadership". It is also submitted that the LC was an internal management structure without any legal status of being included in the Bylaws or under the Articles of Organization. We further allege that if Leadership Circle did acquire legal status at a later date, it was initiated after the illegality was pointed out by Plaintiff Johns, and after she initiated measures to correct the apparent illegality.

120.    Defendants Black & Pink, the Leadership Circle, and the Board of Directors operated through and on behalf of each other, and engaged in collective decision-making. All the defendants were aware of the shadow governance structure black & Pink. Defendants collectively decided to not disclose material facts about Black & Pink activities and governance structure to the Plaintiffs at or prior to signing of their employment contracts.

121.    Because of Defendants' failure to disclose material facts, Plaintiffs accepted employment with Black & Pink to their detriment and was deprived of their constitutionally protected contractual rights.

122.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**Count 4 - 42 U.S.C. §1986**
**(Monica James and Tray Johns)**

123.    The specified defendants' failure to take feasible steps to aid in preventing the actions described here, by informing the lawful authorities or otherwise, violated the command of 42 U.S.C. §1986.

**Count 5 - Fraud**
**(Monica James and Tray Johns)**

124.    Defendants Jason Lydon, Black & Pink, the Board, and the Interim Leadership Circle, individually, collectively and through each other made false statements and misrepresentation to Monica James and Tray Johns concerning Black & Pink's activities. Specifically: (a) the inside prison chapters were engaged in actions that would be deemed as breaking of the prison rules and conducting clandestine activities as part of their "organizing," (b) Black & Pink is an organization engaged in selling of artwork from within the prisons, (c) Black & Pink's publications were being rejected by prisons for promoting inmate to inmate violence, (d) Black & Pink is engaged in publishing erotica in prisons, (e) Black & Pink newspapers were being used by prison gangs as a mode of communication, and (f) that the transition of leadership was intentionally designed to operate in a way whereby Plaintiffs and the new leadership of the organization would be controlled by a shadow board consisting of people on "Leadership Circle.

125.     Plaintiffs reasonably relied to their detriment upon Defendants false statements and

misrepresentations. As the intended, direct and proximate result thereof, they were harmed, and

continue to suffer harm, for which Defendants are liable.

126.     Plaintiffs have been damaged by Defendants' fraudulent misrepresentations and conduct

in an amount to be determined at trial.

**Count 6 - Unlawful Business Acts and Practices**
**Massachusetts G.L. c. 93A**
**(Monica James and Tray Johns)**

127.     To prevail on a claim under c. 93A, a plaintiff must establish "(1) that they are proper

plaintiffs to bring a claim under § 9, (2) that the defendants committed unfair or deceptive acts or

practices in the conduct of any trade or commerce, and (3) that those acts or practices were a

foreseeable cause of injury to the plaintiffs." *Mac's Homeowners Association v. Gebo*, 92

Mass.App. Ct. 453, 458 (2017), citing *Iannacchino v. Ford Motor Co*., 451 Mass. 623, 630 (2008).

128.     Plaintiff James and Plaintiff Johns are proper plaintiffs because (i) both are black (also

referred to as "POC" meaning "People of Color.") and formerly incarcerated LGBT people, who,

at one point, were consumers of the actions injected in the prisons and jails by Defendants and

were targeted by Defendants to further their "transition of leadership." Defendants, in their

advertisement for the National Director and National Organizer position states, "Black and Pink

only hires individuals with a history of incarceration and we strongly encourage applications from

individuals most impacted by the prison industrial complex." (Exhibit I)

129.     Defendants' knowingly and intentionally failed to disclose material information regarding

Black & Pink's activities and shadow organizational structure of Board delegating power to

undisclosed members of Leadership Circle. Further, Title 20 Administrative Code Section 120.70

of Illinois states "Individuals shall not trade or traffic with, or aid, abet, or solicit unauthorized

actions by, offenders or releases." Defendants did not disclose to Plaintiff James and Plaintiff Johns that (i) they were engaged in facilitating trade of art-work in the prisons, (ii) they were facilitating suspect inmate-to-inmate communications, (iii) they intentionally created a coercive organizational structure, whereby it was the expectation that misstatements were to be made under penalty of perjury concerning the shadow decision making power of the Leadership Circle, in opposition of M.G.L Ch. 180 Section 3, and (iv) they were being banned from various prisons/jails, including the Illinois Department of Corrections for being deemed as a publication that is inciting inmate to inmate violence. These were material facts about Black & Pink that Plaintiffs were not made aware of when they entered into a contractual relationship with Black & Pink. If Plaintiffs were made aware of the above stated facts, they would have never entered into a contractual relationship with Defendants.

130.     Defendants willful and malicious non-disclosure was a foreseeable cause of Plaintiff John and Plaintiff James' injury, which was to become associated and enter into a contractual relationship. If Plaintiffs would have known all the facts that were willfully undisclosed by Defendants, Plaintiffs would have never agreed to accept the leadership of Black & Pink, become employed by it, and in turn experience the discriminatory and hostile treatment from Defendants.

131.     On August 1, 2018, Plaintiff James sent to the Defendants by certified mail a written demand for relief, identifying the claimants and the class they seek to represent, and reasonably describing the unfair and deceptive acts or practices relied upon and injuries suffered. A copy of said demand is attached as Exhibit A1.

132.     On August 6, 2018, Plaintiff Johns sent to the Defendants by certified mail a written demand for relief, identifying the claimants and the class they seek to represent, and reasonably

describing the unfair and deceptive acts or practices relied upon and injuries suffered. A copy of said demand is attached as Exhibit A2.

133.    Defendants have not timely responded to and thereby are deemed to have refused the Plaintiffs' demand for relief; further, said non-response constitutes a refusal made in bad faith, with knowledge or reason to know that the act or practice complained of violated G.L. c. 93A.

134.    All of the Defendants' unfair and deceptive practices were willful and knowing within the meaning of M.G.L. c. 93A.

### Count 7 - Violation of the Massachusetts Equal Rights Act
### (Monica James and Tray Johns)

135.    The Massachusetts Equal Rights Act ("MERA") read with M.G.L. c. 93, §102, prohibits purposeful discrimination based on, inter alia, sex, and race, including discrimination in the course of employment. Where an employee is not able to bring a claim for employment discrimination under M.G.L. c. 151B because the employer has fewer than six (6) employees, said employee may bring a claim under MERA.

136.    Defendant violated MERA by discriminating against Plaintiff James & Plaintiff Johns on the basis of their race and sex and denying them the enjoyment of the same rights as white male citizens and the full and equal benefit of all laws by its above-referenced actions and also as described in other Counts of the Complaint.

137.    As a direct and proximate result of Defendant's conduct, Plaintiff James and Plaintiffs Johns have been discriminated against based on her gender and/or sex, and race, and has therefore suffered loss of income and benefits, humiliation, embarrassment, loss of personal and professional reputation and self-esteem, and severe emotional distress.

### Count 8 - Constructive Discharge
### (Monica James)

138.     Defendants constructively discharged Plaintiff James by making her working environment so painful, humiliating, and traumatic that no reasonable person could continue to work there.

139.     A reasonable person in Plaintiff James' position would have been compelled to leave the employment of Defendants.

140.     On December 8, 2017, Plaintiff James emailed her notice of resignation to Black & Pink's Voting Leadership Circle.

141.     As a reasonably foreseeable consequence of this constructive termination, among other injuries, Defendants caused Plaintiff James a loss of income, self-esteem, reputational, and emotional harm.

### Count 9 - Sexual Harassment in Violation of M.G.L. c. 214, §1C
### (Monica James)

142.     Defendants created a hostile work environment for Plaintiff James by subjecting her to intimidation and harassment for rejecting Frank Place's act of recording/attempting to record her in performance of a sex act.

143.      The hostile work environment to which Plaintiff James was subjected included, but was not limited to, (i) Frank Place pulling a phone to record Plaintiff, without her consent, during performance of a sexual act; (ii) Defendants consisting of the Interim Leadership Circle, and other Black & Pink members ganging up on Plaintiff James for invoking her right to access the legal system against Frank Place, (iii) Jason Lydon, her then immediate supervisor threatening her life and employment if she contacted police against Frank Place, (iv) targeting and contempt from Black & Pink Boston Chapter members and the Interim Leadership Circle for invoking the legal system on Frank Place, (vii) Michael Cox, with Johannes Wilson's guidance and support attempted to create a premeditated disruptive environment to record Plaintiff James in an unseemly

encounter, with an intent to blackmail and/or compromise Plaintiff's agency of self, (viii) Harassment of Plaintiff Johns for protesting to the discriminatory treatment of Plaintiff James.

144.     Defendants initiated and continued to take hostile actions and intimidation tactics in response to Plaintiff's reasonable action of asserting her own constitutional and privacy rights.

145.     Said hostile work environment caused Plaintiff James severe emotional distress and unreasonably interfered with her ability to safely perform her professional obligations by causing her to be very fearful for her personal integrity and safety, and thus making it impossible for her to continue to work at Black & Pink, or be associated with it in any capacity.

146.     Defendants failed to take prompt remedial action; to the contrary, Defendants, by and through its agents, treated Plaintiff James hostilely for having complained about the incident and seeking the protection of the legal system.

147.     As a result, Plaintiff James has suffered damages of loss of employment, professional opportunities, and severe emotional distress.

**Count 10 – Defamation Mass. Gen. Laws Ch. 231, § 92
(Monica James and Tray Johns)**

148.     In January 2018, on multiple occasions, Defendants made false and defamatory statements via their mailing listserv to numerous unknown recipients and organizations nationwide, in an effort to co-opt Plaintiff's work, advocacy, message, to ridicule her personally, to discredit her personally and professionally, and to paint her in a negative light. In April 2018, Defendants republished the false and defamatory letter.

149.     In April 2018, Defendants published a defamatory and hostile article on Medium under the authorship of Michael Cox.

150.     In September 2018, Defendants again caused to be published a false and defamatory article on Medium under the authorship of Chris Cummings to intimidate and harass Plaintiffs. Upon information and belief, Chris Cummings is a pseudonym for the Defendants, who engage in collective actions and decision-making.

151.     Defendants repeated the defamatory statements to many other people, acquaintances, partners and competitors and, as a result, Plaintiffs experienced humiliation and blacklisting from other industry professionals.

152.     As a result of Defendants' defamatory comments and unlawful actions, Plaintiffs have sustained substantial damages including grave mental distress and fear.

### Count 11 - Violation of the Massachusetts Wiretap Statute
### (Monica James)

153.     Defendant, through its agents, the ones known to Plaintiff are Frank Place, Michael Cox, Johannes Wilson, and Jason Lydon, used intercepting devices, namely hidden audio and video surveillance via cell phones to secretly record or attempt to record, intercept, and/or view the personal and private images and/or oral communications of Plaintiff without her knowledge or consent.

154.     The images, conduct, and/or oral communications captured by Defendant's agent Michael Cox and Frank Place or any other person were knowingly and willfully intercepted, disclosed, and/or used by Defendants in violation of M.G.L. c. 272, §§99C and Q.

155.     Plaintiff James' personal and privacy interests and rights were violated by Defendant's unauthorized and illegal interception, disclosure, and/or use of their secretly recorded images, conduct, and/or communication.

156.     Defendant's interception, disclosure, and/or use of Plaintiff's images, conduct, and/or oral communications were done knowingly, maliciously, and/or systematically with the intent to

deprive Plaintiff James of her personal and privacy interests and rights as guaranteed under the Constitution and laws of the Commonwealth of Massachusetts.

157.     Plaintiff is entitled to actual and punitive damages to the highest extent of the law, reasonable attorneys' fees, and Court costs as a result of Defendant's violation of M.G.L. c. 272, §§99C and Q, and/or the minimum statutory damages of $100.00 per day for each violation.

### Prayer For Relief

WHEREFORE, Plaintiff Monica James and Plaintiff Arlinda (Tray) Johns, respectfully pray that this Honorable Court:

1.   Issue its declaratory judgment that the actions described herein deprived the plaintiffs of rights guaranteed to them by U.S.C. §§1985(3), 1986, and §1981, by the Massachusetts Constitution, statutory and common laws;

2.   Enter judgement against Defendants on all counts of the Complaint;

3.   Refer to the United States Attorney and other appropriate agencies for investigation and possible prosecution, of any acts of the defendants which appear to be violations of federal criminal statutes;

4.   Award plaintiffs damages in an amount to be determined at trial;

5.   Award plaintiffs enhanced damages as permitted by law, plus its reasonable costs and attorney's fees for this action;

6.   Grant plaintiffs such other relief as the Court deems necessary and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all the

claims asserted in this Complaint so triable.

Dated: October 17, 2019          Respectfully submitted,

/s/Tanvi K. Sheth

_____

Tanvi Kaushal Sheth
(IL Bar No. 6321509)
55 East Monroe Street, Suite 3800
Chicago, IL 60603
tshethlegal@gmail.com
C: 847.529.8279

Attorney for the Plaintiffs