## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MONICA JOSEY JAMES, and ARLINDA L. JOHNS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | )      Case No. 19 C 3366 ) |
| JASON LYDON, JOHANNES WILSON, ZAHARA GREEN, MEGAN SELBY, BLACK AND PINK, INC., and JOHN DOES 1-TBD, | ) ) ) ) ) |
| Defendants. | ) |

### <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Monica Josey James and Arlinda L. Johns have sued their former employer, Black & Pink, Inc., along with a general member of the organization, two individuals on its board, and its former director. James and Johns have alleged claims of race-based discrimination and retaliation in violation of 42 U.S.C. § 1981 and state law claims of fraud, defamation, and constructive discharge. The defendants have moved to dismiss all of the claims for failure to state a claim. For the reasons stated below, the Court grants the motion in part and denies it in part.

### Background

The following is based on factual allegations in the plaintiffs' second amended complaint, which the Court must accept as true. *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020). Black & Pink, Inc. is a national nonprofit organization that

serves—through policy advocacy, education, direct service, and organizing—LGBTQ people who are or have been incarcerated. Jason Lydon founded Black & Pink in 2005 and was its National Director from the time of founding through August 17, 2017. Johannes Wilson was, at all times relevant to this suit, a member of Black & Pink's board. Zahara Green and Megan Selby were general members of the organization, and in November 2017, Green became a board member.

Black & Pink hired James and Johns, both African American formerly incarcerated women, in 2017. James and Johns allege that during their hiring processes, Lydon informed them that the organization was undertaking a transition in leadership "from the hands of a white gay man to African American formerly incarcerated people." 2d Am. Compl. (dkt. no. 52) ¶ 24. This transition was to involve Lydon stepping down from his role as National Director, and several white board members were to step down as well. Black & Pink would then be led by an internal entity called the "Leadership Circle," which would serve as the new board of the organization. The membership of the Leadership Circle was to be "reflective of the communities being served." Id. ¶ 25.

James and Johns have alleged that this leadership transition never happened. Although Lydon stepped down as National Director in August 2017 and was replaced by Johns, he continued to control the organization's bank account, phone accounts, and direct the actions of the Leadership Circle. Thus, the plaintiffs allege that Lydon effectively retained control of Black & Pink even after stepping down.

A. **James's experience at Black & Pink**

James began working for Black & Pink as an organizer in March 2017. She was

initially hired to work remotely from Chicago, but a few days after she started, Lydon informed James that to keep her position, she would have to move to Boston. James did so in June 2017.

Shortly after her arrival in Boston, James had a brief dating relationship with a member of Black & Pink, Frank Place, a white man. In July 2017, James discovered that Place had recorded her "performing a sex act on him," without her consent, and threatened to report him to the police if he ever did that again. *Id.* ¶ 37. Roughly three weeks later, Lydon, who was James's supervisor, asked her why Place was "not happy" with her. *Id.* ¶ 38. James then informed Lydon that Place had recorded her without consent, and Lydon responded that if she wanted to keep her job, she had to apologize to Place.

The plaintiffs have alleged that after James's fall-out with Place, she was subjected to mistreatment by Tyrell Hinson, a coworker at Black & Pink, Michael Cox, a member of the Leadership Circle, and Wilson. When Hinson learned that James had threatened to report Place to the police, Hinson became angry and informed James he would not work with her. Cox and Wilson allegedly "started to characterize [James] as an aggressive black woman" and demanded that their interactions with her be recorded. *Id.* ¶¶ 49-50.

In September 2017, Cox and James had a meeting with the goal of reconciling their differences. At this meeting, according to plaintiffs, Cox told James he would never forgive her for threatening to report Place to the police and that he "would not rest" until James was fired. *Id.* ¶ 52. He told her he "missed the old days" and invited her outside to "fight it out." *Id.*

James complained about Cox to Black & Pink's board, the Leadership Circle, and Johns, who was at that time Black & Pink's National Director. The Leadership Circle investigated the conflict between James and Cox. It concluded that some of the conflict was related to James's fall-out with Place, and it therefore requested that James refrain from initiating or engaging in any contact with Place.[1]

In November 2017, James filed an application in Massachusetts state court for a harassment protection order against Cox, alleging that he posted a photo of James and Place on social media, invited James to fight him, and attended Black & Pink events that James organized. Johns signed the application as a witness.

On December 8, 2017, James sent the Leadership Circle an e-mail stating that she wanted to "address the matters at hand and upon mutual agreement walk away peacefully and respectfully." 2d Am. Compl., Ex. 6 (dkt. no. 52-6). She closed the e-mail by stating that she was "looking forward to next steps." On December 21, 2017, she received a notice of termination from the Leadership Circle.

**B.      Johns's experience at Black & Pink**

On August 17, 2017, Johns began working for Black & Pink as its National Director. She moved to Boston for this role. Johns alleges that once she assumed this

---

[1] The plaintiffs have alleged that "as a resolution to their investigation, the Leadership Circle demanded that if Plaintiff James wanted to continue her employment, she must agree to not contact Frank Place and not initiate any legal proceedings." *Id.* ¶ 57. In support of this allegation, they cite letters—attached to their complaint—from the Leadership Circle sent to James and Cox at the close of the investigation. *See* 2d Am. Compl., Ex. 3 (dkt. no. 52-3). The letters do not contain any demand that James agree not to initiate legal proceedings, nor do they state that terminating contact with Place was a condition of James's continuing employment. "[W]ritten exhibits attached to the complaint may trump contradictory allegations." *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 802 (7th Cir. 2018).

position, Lydon and Wilson "presented [her] with internal documents that severely curtailed her powers as National Director." 2d Am. Compl. (dkt. no. 52) ¶ 63. And even though Johns had replaced Lydon as the National Director, Lydon maintained his authority over the organization by controlling the Leadership Circle and Black & Pink's bank and phone accounts. According to Johns, this interfered with her ability to manage and run the organization.

In November 2017, Johns alleges that Lydon and Wilson locked her out of her Black & Pink email account and work computer, and they "institut[ed] themselves as the new board of directors." They then allegedly directed Cox and another Black & Pink member to contact vendors, through Johns's email account, encouraging them to cancel their contracts with Black & Pink.

Johns "sens[ed] a hostile takeover of Black & Pink by the white volunteers," and she therefore withdrew $50,000 from the organization's account, which she converted to a cashier's check in Black & Pink's name. *Id.* ¶ 74. Johns sent a copy of this check to Black & Pink's bookkeeper, who advised her to deposit it in a new account. Lydon then removed Johns's authorization to access Black & Pink's bank account. Upon learning this, Johns deposited "any checks that were in her possession," although her complaint is not clear regarding whether this included the $50,000 cashier's check. *Id.* ¶ 76.

On December 4, 2017, the Leadership Circle terminated Johns's employment with Black & Pink.

C.    **January 2018 letter**

In January 2018, the Leadership Circle circulated to Black & Pink's listserv, funders, and other advocacy organizations a letter describing the events leading up to

5

the departures of James and Johns from Black & Pink. The letter, which the plaintiffs have attached to their complaint, stated among other things that Johns "attempted to withdraw and cash substantial funds from the organizational bank account," and "worked with [James] to contact major funders to try to persuade them to stop funding B&P." 2d Am. Compl., Ex. 7 (dkt. no. 52-7) at 6-7. It also stated that James "attempt[ed] to extort funds from B&P" and worked with Johns to "contact and dissuade funders." *Id.* at 7.

**D. Procedural history**

In May 2019, James and Johns sued Black & Pink, Lydon, several members of Black & Pink's leadership, and some general members of the organization—twelve defendants in total. The defendants moved to dismiss all of the claims in the plaintiffs' first amended complaint; they also moved to dismiss seven of the defendants for lack of personal jurisdiction. The Court granted the motion, with leave to amend, except for the defendants dismissed on jurisdictional grounds.

Jones and James then filed a second amended complaint against the five remaining defendants—Black & Pink, Lydon, Wilson, Selby, and Green—in February 2020. They have alleged two claims under 42 U.S.C. § 1981: hostile work environment as to James (count 1) and retaliation against James and Johns (count 2). Additionally, they have asserted the following state law claims: fraud (count 3), defamation of James (count 4) and Johns (count 5), and constructive discharge of James (count 6).

The defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the counts for failure to state a claim.

6

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is "plausible on its face." *O'Brien*, 955 F.3d at 621-22 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. At the pleading stage, a plaintiff need not offer a full description of facts that will prove her claim, and she receives the "benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the non-moving party. *O'Brien*, 955 F.3d at 621. In addition to the allegations in the complaint itself, a court may consider documents that are attached to the complaint. *Id.*

The Court will address the section 1981 claims first and the state law claims second.

### A.    Section 1981 claims

The legal analysis for discrimination claims under 42 U.S.C. § 1981 is identical to that for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, *Ferrill v. Oak Creek-Franklin Joint School District*, 860 F.3d 494, 499 (7th Cir. 2017), so the Court's analysis relies on cases involving claims under both those statutes.

"The pleading requirement for employment-discrimination claims is minimal." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. Appx. 826, 828 (7th Cir. 2017); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). "In these

types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Luevano*, 722 F.3d at 1028 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir.2008)); *see also Clark*, 709 F. App'x at 828 ("A plaintiff need only identify the type of discrimination, when it occurred, and by whom.").

### 1.    Hostile work environment (count 1)

James has alleged that Black & Pink, Lydon, and Wilson were responsible for a hostile work environment that violated her rights under section 1981. To prevail on this claim, James will have to establish that (1) she was subject to unwelcome harassment (2) based on her race (3) that was so severe or pervasive as to alter the conditions of employment, and (4) there is a basis for employer liability. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018). James alleged she was subjected to the following mistreatment, all of which she contends was based on her race: (1) Lydon's threat to fire her; (2) Hinson's refusal to work with her; (3) Cox and Wilson characterizing her as "aggressive"; (4) Lydon and Wilson pressuring Johns to fire her; (5) Cox inviting her to fight him and stating that he "missed the old days"; (6) Lydon and Hinson "threaten[ing] her safety"; (7) Lydon making James's "personal affairs a topic of workplace discussion for many months"; (8) Cox and Wilson demanding that interactions with James be recorded; and (9) the Leadership Circle's failure to investigate James's allegations about Place's misconduct against her.[2]  2d Am. Compl. (dkt. no. 52) ¶¶ 50, 52, 96.

---

[2] James also points to the defendants' letter regarding the departures of James and Johns, circulated on Black & Pink's listserv, but this letter was sent in January 2018, after James had already resigned.

In their motion to dismiss, the defendants make two arguments in support of dismissal. The first is that James has not offered factual support for her allegation that the adverse actions were based on her race. Defs.' Mot. to Dismiss Pls.' 2d Am. Compl. (dkt. no. 55) at 6-7. The short answer is that she is not required to do so at this stage of the case. The Supreme Court has held that claims of discrimination are not subject to a heightened pleading standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-15 (2002). And the Seventh Circuit has held that *Swierkiewicz* survived the Supreme Court's adoption of the *Twombly-Iqbal* standard for pleading. *Luevano*, 722 F.3d at 1028. This includes allegations of discriminatory motivation; a plaintiff need not allege such matters with particularity to survive a motion to dismiss. *See, e.g., Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 537-38 (7th Cir. 2016), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The applicable standard is "undemanding" and requires only an allegation that the adverse action was taken on a prohibited basis. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *see also, e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-45 (7th Cir. 2010).

Ultimately James will have to support her allegations regarding racial motivation with evidence, and as the Seventh Circuit has stated, "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014). But *Zayas* and cases like it were decided at the summary judgment phase, and we are not there yet. At this stage, a plaintiff need only allege enough factual content to "nudge[ ] [her] claim[ ] across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). James has done

9

that with regard to her allegations that the actions she cites were racially motivated.

In their motion, the defendants also argue that James' allegations involve "isolated incidents," some involving only co-workers, that are insufficient to sustain a viable hostile work environment claim. Defs.' Mot. to Dismiss Pls.' 2d Am. Compl. (dkt. no. 55) at 7. As for the point about co-worker conduct, James has sufficiently alleged that most, though perhaps not all, of the actions she identifies were undertaken or instigated by Lydon—alleged to be her then-supervisor—and/or by members of the Leadership Circle. That is enough for present purposes to sufficiently allege a basis for employer liability.

The Court takes the defendants' other point as a contention that the alleged mistreatment was not sufficiently severe or pervasive to be actionable. "To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir.2009)). "Whether conduct meets this bar depends on 'the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance.'" *Johnson*, 892 F.3d at 900 (quoting *Scruggs*, 587 F.3d at 840). "We expect a certain level of maturity and thick skin from employees," and "[o]ffhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Johnson*, 892 F.3d at 900 (quoting *Passanati v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012)).

Generally, "it is premature at the pleadings stage to conclude just how abusive [plaintiff's] work environment was." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015). In *Huri*, for example, the Seventh Circuit reversed the dismissal of a Muslim plaintiff's hostile work environment claim based on religious discrimination, ruling that "screaming, prayer circles, social shunning, implicit criticism of non-Christians and uniquely bad treatment of [plaintiff] . . . could plausibly be abusive." *Id.* Similarly, in *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819 (7th Cir. 2014), the Seventh Circuit reversed the dismissal of a constructive discharge claim—which typically requires more severe conduct than a simple hostile work environment claim[3]—holding that the plaintiff had plausibly alleged intolerable conditions based on allegations of "regular belittlement, unfair criticism, and unduly poor assessments." *Id.* at 829-30. The court in *Carlson* noted that although those conditions "may not ultimately qualify as intolerable, . . . we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required." *Id.* at 830. Applying *Huri* and *Carlson*, courts in this district have tended to deny motions to dismiss where plaintiffs alleged some ongoing or repeat instances of harassment, and they have granted the motion where plaintiffs alleged only one or two discrete instances of harassment. *Compare Moses v. Sloan Valve Co.*, No. 16 C 9972, 2017 WL 3838040, at *3 (N.D. Ill. Sept. 1, 2017) (denying motion to dismiss where plaintiffs had alleged comments based on "improper stereotypes about [plaintiffs'] race," accusations of stealing, verbal threats, and defamation), *with Haymon v. Metra*, No. 18 C 848, 2020

---

[3] *See, e.g., Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 628 (7th Cir. 2019).

WL 1548953, at *7 (N.D. Ill. Mar. 31, 2020) (dismissing claim where plaintiff had alleged only single instance of an offensive comment based on her religion), *and Harris v. Chicago Transit Auth.*, No. 14 C 9106, 2015 WL 5307721, at *6 (N.D. Ill. Sept. 10, 2015) (dismissing claim where plaintiff had alleged only two instances of offensive gender-based comments that were separated by a year).

In this case, the conduct alleged by James clears the threshold for pleading purposes. She alleges ongoing and repeated harassment based on her race, including at least one threat of physical violence, repeated threats to terminate her employment, verbal abuse, and shunning. This is sufficient at the pleadings stage to give rise to a plausible claim that James experienced misconduct that was sufficiently severe or pervasive to alter the conditions of employment, as required for a hostile work environment claim. *See Huri*, 804 F.3d at 834. Although James may not ultimately be able to establish that any mistreatment based on her race meets the applicable standard for a hostile work environment claim, the Court "cannot say so definitively at the pleading stage." *Carlson*, 758 F.3d at 830.

The Court denies the motion to dismiss count 1.

### 2. Retaliation (count 2)

James and Johns have alleged that Black & Pink terminated them in retaliation for engaging in activity protected under section 1981. To state a claim for retaliation under section 1981, a plaintiff's factual allegations must support plausible inferences that (1) she engaged in an activity protected under the statute; (2) she suffered a materially adverse employment action; and (3) there was a causal link between the two. *See Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). Protected activity is "some step

in opposition to a form of discrimination that the statute prohibits." *Ferrill*, 860 F.3d at 501. The employee's action need not have been in opposition to conduct that is "*actually* prohibited" under section 1981—a protected activity can be based on "a good-faith and *reasonable* belief" that the plaintiff is opposing unlawful conduct. *Id.* But "[c]omplaining about a co-worker's actions is not statutorily protected expression when the complained of conduct does not relate to race." *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 809 (7th Cir. 2014).

James has alleged that the protected conduct for which she was terminated was her complaint about Cox to Black & Pink's leadership and her filing an application for a harassment protection order against Cox. Johns has alleged that she was terminated for signing and supporting James's application for the order of protection. But neither the complaint about Cox nor the application for an order of protection amounts to activity protected under section 1981. James has not alleged that her complaint about Cox to Black & Pink's leadership made any reference to race-based mistreatment; she alleges only that she complained about Cox generally. And her application for a harassment protective order, which she attaches to her complaint here, did not make any allegations of racially discriminatory conduct by Cox. For these reasons, James and Johns have failed to sufficiently alleged that they engaged in protected activity for the purposes of a retaliation claim under section 1981. *See Tank*, 758 F.3d at 809. The Court therefore dismisses count 2.

## B. State law claims

The parties' arguments regarding the state law claims apply Massachusetts law, so the Court will likewise apply the law of that state. *See Selective Ins. Co. of S.C. v.*

*Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016).

### 1.    Fraud (count 3)

Common law fraud under Massachusetts law is "a knowing false representation of a material fact intended to induce a person to act in reliance, where the person did, in fact, rely on the misrepresentation to his or her detriment."  *Chelsea Hous. Auth. v. McLaughlin*, 482 Mass. 579, 591 n.12, 125 N.E.3d 711, 721 n.12 (2019).  A fraud claim is subject to the heightened pleading standard in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead with particularity the circumstances constituting fraud. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017).  "This ordinarily requires describing the who, what, when, where, and how of the fraud." *Id.* (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014)).

James and Johns have alleged that the representation that Black & Pink was undergoing a leadership transition away from "a white gay man to African American formerly incarcerated people" was a fraudulent misrepresentation upon which they relied to their detriment by accepting positions with Black & Pink, moving to Boston, and forgoing other employment opportunities.  The defendants argue that the leadership transition representation may either be construed as a statement about a future condition, which is not actionable as fraud, or about a current condition that was not false.  Both of these arguments lack merit.

Under Massachusetts law, promises regarding future conditions are actionable as fraud if "the promisor had no intention to perform the promise at the time it was made." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 474, 918 N.E.2d 36, 49 (2009).  The plaintiffs have alleged that in late 2015, Lydon set up the

14

Leadership Circle as a "shadow management structure" that would allow him to retain control of Black & Pink after he eventually stepped down as National Director in 2017. 2d Am. Compl. (dkt. no. 52) at ¶ 23. This allegation supports a reasonable inference that Lydon had no intention of effecting a leadership transition at Black & Pink.

The leadership transition statement is similarly actionable as fraud if it is construed as a statement about an existing condition at Black & Pink: that it was in the process of transition. The defendants argue that this statement was not false, because Lydon stepped down as National Director and was replaced by Johns, an African American formerly incarcerated woman. But the plaintiffs have alleged that there was never any actual transfer of power or decision-making authority away from Lydon, a white man, because he retained control over the organization through the Leadership Circle and by continuing to control Black & Pink's bank and phone accounts. These allegations support a reasonable inference that the leadership transition representation was false.

The Court denies the motion to dismiss the plaintiffs' fraud claim.

### 2. Defamation (counts 4 and 5)

The plaintiffs have alleged that several of the statements in the January 2018 letter that was circulated to Black & Pink's membership, funders, and outside organizations contained defamatory statements about them.

Under Massachusetts law, a defamation claim brought by a non-public figure has the following elements: (1) the defendant made a statement concerning the plaintiff to a third party; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant acted negligently; and (4) the statement caused economic loss.

15

*Scholz v. Delp*, 473 Mass. 242, 249 & n.8, 41 N.E.3d 38, 45 & n.8 (2015). To be actionable, generally the statement about the plaintiff must be false. *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009) (stating Massachusetts law). There are four types of statements that are actionable without proof of economic loss, two of which are relevant here: statements that charge the plaintiff with a crime and statements that may prejudice the plaintiff's profession or business. *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 630, 782 N.E.2d 508, 511 (2003).

The plaintiffs do not allege economic loss and instead pursue their defamation claims based on the contention that the letter contained statements that accused them of crimes and prejudiced their profession. As to the accusations of crimes, James cites the statement in the letter accusing her of extortion, and Johns points to the statement that she improperly withdrew funds from Black & Pink's bank account, an accusation of theft. These are statements that are actionable under Massachusetts law even without an allegation of economic loss.

The plaintiffs also contend that the letter's statements that they attempted to dissuade funders from giving to Black & Pink are actionable without a claim of economic loss because the statements prejudiced them in their professions. Under Massachusetts law, a statement prejudices a person in her profession if it amounts to an accusation that she lacked a necessary professional characteristic. *Id.* at 631, 782 N.E.2d at 511. The defendants' statement that James and Johns were trying to deter funders from donating to Black & Pink does not meet this requirement, as it does not concern either plaintiff's competence or ability to perform her role at Black & Pink. *Cf. Sindi v. El-Moslimany*, 896 F.3d 1, 20 (1st Cir. 2018) (applying Massachusetts law)

(statements impugning a researcher's scientific aptitude and professional integrity—necessary characteristics of her profession—were actionable without proof of economic harm).

In short, the only statements in the letter that are actionable without economic loss are those that accuse Johns and James of crimes.  The defendants argue that the defamation claims should be dismissed because the plaintiffs have failed to allege that they acted negligently.  This argument lacks merit because the plaintiffs have alleged that the defendants published the January 2018 letter, which contained statements that the defendants "knew or should have known to be false."  2d Am. Compl. (dkt. no. 52) ¶ 136.

The defendants argue next that the defamation claims should be dismissed because the plaintiffs have admitted that they engaged in criminal conduct and thus the statement in the letters were not false.  This argument also lacks merit.  The plaintiffs' allegations may reference some of the same conduct that the 2018 letter characterized as criminal, such as Johns's withdrawal of funds from Black & Pink's accounts, but the plaintiffs have not admitted that James committed extortion or that Johns stole from Black & Pink.

For these reasons, the Court denies the motion to dismiss counts 4 and 5.

The defendants have also moved to dismiss Selby from counts 4 and 5, arguing that there are no allegations of any conduct by her that could trigger liability for defamation.  A defendant is liable for defamation under Massachusetts law "upon proof of negligent publication of a defamatory falsehood."  *Jones v. Taibbi*, 400 Mass. 786, 797, 512 N.E.2d 260, 267 (1987).  The publication element is met if the defendant

17

communicates the defamatory statement to a third party.  *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66, 809 N.E.2d 1034, 1036 (2004).  The plaintiffs have alleged that Selby communicated the defamatory statements about them by including the January 2018 letter in Black & Pink's newsletter, which was distributed to more than 11,000 people.  Additionally, they have alleged that Selby "knew or should have known" the statements in the letter to be false.  2d Am. Compl. (dkt. no. 52) ¶ 136. The Court therefore denies the motion to dismiss Selby from the defamation claims.

### 3.    Constructive discharge (count 6)

James alleges that she was constructively discharged when she was forced to resign because the conditions at Black & Pink had become "painful, humiliating, and traumatic."  2d Am. Compl. ¶ 145.  An employer's constructive discharge of an employee is not actionable without more; Massachusetts is an at-will employment state. But "Massachusetts courts recognize an exception to the [state's] general at-will employment rule when employment is terminated contrary to a well-defined public policy."  *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 521 (1st Cir. 2009).  And Massachusetts law is clear that constructive discharge satisfies the termination requirement for a claim of this type.  *See GTE Prods. Corp. v. Stewart*, 421 Mass. 22, 33-34, 653 N.E.2d 161, 168 (1995).  Because the employment relationship is "actually severed involuntarily by the employer's acts," it is "legally regarded as a firing rather than a resignation."  *Id.* at 34, 653 N.E.2d at 168.

Constructive discharge occurs when "the employer's conduct effectively forces an employee to resign."  *Id.* at 33-34, 653 N.E.2d at 168.  Defendants argue that James's claim does not meet this requirement.  The Court agrees.  James does not

18

allege in her complaint that she actually resigned. Rather, she alleges that on December 8, 2017, she "emailed her notice of resignation to Black and Pink's Voting Leadership Circle." 2d Am. Compl. (dkt. no. 52) ¶ 147; *see also id.* ¶¶ 7, 79. But the document that James identifies as her "notice of resignation," which she attached to her complaint, does not say that she resigns her position. Rather, James says in the cited e-mail that "I want to personally address the matters at hand and upon mutual agreement walk away peacefully and respectfully," and she refers to "next steps," suggesting the need for further discussion. *Id.*, Ex. 6 (dkt. no. 52-6). This is a situation in which the exhibit that James cites contradicts what she says about it and thus "trump[s] [the] contradictory allegations." *Squires-Cannon*, 897 F.3d at 802. The Court dismisses count 6 on this basis and thus need not address whether James has adequately alleged, as required, that her working conditions were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *GTE Prods. Corp.*, 421 Mass. at 34, 653 N.E.2d at 169.

## Conclusion

For the foregoing reasons, the Court dismisses counts 2 and 6 of the plaintiffs' second amended complaint for failure to state a claim but otherwise denies the defendants' motion to dismiss [dkt. no. 55]. The defendants are directed to answer the remaining claims by no later than July 6, 2020. Both sides' Rule 26(a)(1) disclosures are also to be made by July 6, 2020. The parties are directed to confer and attempt to reach an agreement regarding a discovery and pretrial schedule. A joint status report addressing this, as well as the possibility of settlement, is to be filed by July 17, 2020. The case is set for a telephonic status hearing on July 21, 2020 at 10:00 a.m., using the

following call-in number:  888-684-8852, access code 746-1053.  Counsel should wait

for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  June 15, 2020